UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

Case # 17-CR-192-FPG

DECISION AND ORDER

ODESSIN MCBRIDE,

Defendant.

## INTRODUCTION

On June 8, 2020, Defendant Odessin McBride filed an Emergency Motion for Reduction in Sentence. ECF No. 51. Defendant requests that the Court reduce his sentence to time served because of the ongoing Coronavirus Disease 2019 ("COVID-19") pandemic. *Id.* The Government opposes the Motion. ECF No. 54. For the reasons that follow, Defendant's Motion is DENIED.

## BACKGROUND

On January 9, 2018, Defendant pleaded guilty to one count of possession with intent to distribute, and distribution of, cocaine pursuant to 21 U.S.C. § 841(a)(1)—a charge that carries a maximum term of twenty years. ECF Nos. 17, 26, 28; 21 U.S.C. § 841(a)(1), (b)(1)(C). On April 5, 2018, Defendant was sentenced to forty-eight months in the custody of the Federal Bureau of Prisons ("BOP") and three years' supervised release. ECF Nos. 38, 39. Defendant is projected to be released on November 11, 2020, but he is scheduled to be placed in a Residential Reentry Center ("RCC")—sometimes referred to as a halfway house—on July 14, 2020. ECF No. 51 at 3; ECF No. 53 at 1.

1

**LEGAL STANDARD**

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Gotti*, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020). Section 3582(c)(1)(A) permits courts to reduce previously imposed terms of imprisonment, often referred to as compassionate release. 18 U.S.C. § 3582(c)(1)(A). Defendants may bring motions under Section 3582(c)(1)(A) if they have satisfied a statutory exhaustion requirement.[1] *Id.* The Court may grant relief if it finds that (1) "extraordinary and compelling reasons warrant [the] reduction" and (2) the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* If these elements are satisfied, the Court is to consider the factors set forth in Section 3553(a), which describes the factors courts are to consider in imposing sentences. *Id.* §§ 3553(a), 3582(c)(1)(A). In analyzing these elements and factors, "[d]istrict courts have broad discretion in deciding whether to grant or deny a motion for a sentence reduction." *United States v. Tagliaferri*, No. 13-CR-115, 2019 WL 6307494, at *3 (S.D.N.Y. Nov. 25, 2019). If the Court grants such a motion, it may reduce the defendant's term of imprisonment and may correspondingly impose a term of probation or supervised release, with or without conditions, provided that such a term does not exceed the unserved portion of the original term of imprisonment. 18 U.S.C. § 3582(c)(1)(A).

**DISCUSSION**

In this case, even if Defendant could establish that extraordinary and compelling reasons warrant a reduction and it would be consistent with the applicable Sentencing Commission policy statement, a sentence reduction is not warranted. Defendant has not presented any evidence that causes the Court to reconsider its prior evaluation of the factors set forth in Section 3553(a).

---

[1] The Government does not dispute that the statutory exhaustion requirement has been satisfied in this case. ECF No. 54 at 2–3.

2

Under Section 3553(a), a court must consider the following factors when it imposes a sentence:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range [provided for by Sentencing Commission guidelines and policy statements];
> (5) any pertinent [Sentencing Commission policy statement];
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The Court weighed these factors when it imposed Defendant's original term of imprisonment just over two years ago. Accordingly, the Court's task here is not to "second guess or to reconsider whether the original sentence was just," but to assess whether "the defendant's circumstances are so changed . . . that it would be inequitable to continue the confinement of the prisoner." *United States v. Ebbers*, 432 F. Supp. 3d 421, 429–30 (S.D.N.Y. 2020) (internal quotation marks omitted) (discussing legislative history of provision). In other words, the issue is whether the original Section 3553 factors "outweigh the 'extraordinary and compelling reasons' warranting compassionate release," and, in particular, "whether compassionate release would undermine the goals of the original sentence." *Id.* at 430–31.

Defendant claims that "extraordinary and compelling" reasons support his release because he is housed at the Elkton Federal Correctional Institution ("FCI Elkton"), which "has been particularly devastated by COVID-19." ECF No. 51 at 2, 5. The Court harbors no doubt that the situation at FCI Elkton was dire. The BOP's failure to control the initial spread of COVID-19 at FCI Elkton has been well documented. *COVID-19 Coronavirus*, FEDERAL BUREAU OF PRISONS, http://www.bop.gov/coronavirus/ (last visited June 29, 2020) (stating that 236 inmates and seven staff members have the virus, 579 inmates and forty-six staff have recovered, and nine inmates have died); *see, e.g.*, *United States v. Schultz*, No. 17-CR-193, 2020 WL 2764193, at *7 (W.D.N.Y. May 28, 2020) ("[T]he BOP has thus far been unable to effectively manage or guard against the virus at FCI Elkton . . . ."). The Court assumes for purposes of this motion that FCI Elkton remains a hotspot for the virus.

Defendant further argues that he suffers from a serious health condition that exacerbates the risk associated with COVID-19. ECF No. 51 at 2, 7–9. Defendant is forty-one and suffers from hypertension and chronic kidney disease. *Id.* at 7.

Even assuming Defendant's medical conditions are sufficient to raise the risk of COVID-19 infection or complications, it is undisputed that Defendant has already contracted COVID-19. *Id.* at 6. Defendant claims "day-to-day increased risk," *id.* at 17, but given his infection with COVID-19, it is unclear exactly what risks he is facing. To the extent Defendant claims that the medical care he would receive if released is superior to the medical care he is currently receiving, Defendant has not adequately supported that allegation.[2] COVID-19 does not "warrant the release

---

[2] Defendant alleges, without support, that "505 men are being held in isolation together, coughing, sneezing, throwing up blood, shivering, [and] taking care of each other." ECF No. 55 at 2. To the extent Defendant implies that medical professionals are not available to treat the inmates at FCI Elkton, Defendant's implication is not supported by the available information. *See* ECF No. 51-1 (limited medical records submitted by Defendant showing that he has received medical treatment and a COVID-19 test). FCI Elkton

4

of every federal prisoner with health conditions that make them more susceptible to the disease." *United States v. Gold*, No. 15-CR-330, 2020 WL 2197839, at *1 (N.D. Ill. May 6, 2020) (internal quotation marks omitted).

Defendant does not describe any additional treatment for COVID-19 that he should be receiving or that he could receive if he were released. *See United States v. Zubkov*, No. 14-CR-773, 2020 WL 2520696, at *3 (S.D.N.Y. May 18, 2020) (inmate received proper medical care after COVID-19 diagnosis, where he was placed in isolation, received daily attention from medical personnel, and facility was prepared to transfer him to a hospital "for more intensive care if necessary"); *United States v. Epstein*, No. 14-CR-287, 2020 WL 2537648, at *4–5 (D.N.J. May 19, 2020) (same); *cf. United States v. Bomboy*, No. 19-CR-157, 2020 WL 2193443, at *2 (M.D. Pa. May 6, 2020) (denying motion for pretrial release due to COVID-19 where defendant was "receiving medical care for any medical issue while in prison" and "offered no plan for medical [care] should he be released"). Defendant further argues that it is possible he could be re-infected with COVID-19. ECF No. 51 at 9. But such unsupported speculation does not warrant compassionate release. *See Epstein*, 2020 WL 2537648, at *6.

Although the Court is sympathetic to Defendant along with the countless others who have been infected with COVID-19, that sympathy does not override the valid considerations that supported Defendant's initial sentence. Defendant concedes that the crime for which he is currently incarcerated "was certainly serious." ECF No. 51 at 16. Defendant also has a lengthy criminal history. ECF No. 34 at 6–10; ECF No. 53 at 2. As described by Defendant, he has an "elevated risk of recidivism by virtue of his prior arrest record, the nature of his past and instant offenses, his limited job skills, self-employment history, poor vocational opportunities, lack of savings,

---

reported that a physician is available each day to assist with any health concerns an inmate may have. ECF No. 53 at 1.

5

diminished assets, a . . . [need to] move [in]to more affordable housing, two minor children to support, a ruined reputation, drug distribution, and civil debts." ECF No. 41 ¶ 12. At sentencing, Defendant faced a guideline range of fifty-seven to seventy-one months imprisonment. ECF No. 34 at 12. Based on mitigating factors, the Court sentenced Defendant to a below-guideline sentence of forty-eight months imprisonment. ECF No. 38. The Defendant's current, unfortunate circumstances do not warrant a further departure from the sentencing guidelines.

The Court harbors two additional concerns regarding Defendant's compassionate release. Given his infection with COVID-19, ordering his immediate release would expose others to the disease. Although the Court assumes it could reduce his sentence once it has been shown that Defendant is no longer a potential vector for COVID-19, such a reduction would result in Defendant skipping his pending RCC placement. To the extent there is any doubt regarding the potential benefits of RCC placement, Defendant himself espoused those benefits and requested that this Court recommend his early placement in an RCC. ECF No. 41; *see United States v. McBride*, No. 17-CR-192, 2020 WL 1905253 (W.D.N.Y. Apr. 17, 2020) (denying Defendant's request). The possibility of avoiding RCC placement weighs heavily against reducing Defendant's sentence given the Court's obligation to consider the provision of "needed educational or vocational training . . . [and] other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D).

The Court recognizes that the situation Defendant finds himself in is of serious concern: as an inmate, he has far less control over his environment and is far more reliant on correctional officials to ensure his safety and to provide adequate medical care during the pandemic. "A just punishment should not include an unacceptable risk of exposure to [or complications from] COVID-19 or any potentially lethal disease." *United States v. Vence-Small*, No. 18-CR-31, 2020

6

WL 2214226, at *4 (D. Conn. May 7, 2020). But neither should the uncertainty engendered by the present crisis be allowed to distort or subvert a just punishment. Even in light of his medical conditions and diagnosis with COVID-19, Defendant has not demonstrated that a reduction in his sentence is appropriate.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Compassionate Release, ECF No. 51, is DENIED.

IT IS SO ORDERED.

Dated: June 29, 2020
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court